FEDERAL SURETY COMPANY, a Corporation, Appellant, v. MIDWEST CONSTRUCTION COMPANY, a Corporation and Herbert F. Schumacher. HERBERT F. SCHUMACHER, Respondent.

(228 N. W. 432.)

938

Opinion filed December 24, 1929.

*Pierce, Tenneson, Cupler & Stambaugh,* for appellant.

*Lemke & Weaver,* for respondent.

BURKE, Ch. J.   This is an action to recover on a general contract of indemnity.   There was a judgment against the Midwest Construction Company by default, Herbert Schumacher appearing in defense of his answer.

After the taking of the testimony, and both parties having rested, the plaintiff moved for a directed verdict which was denied, and the jury having returned a verdict for the defendant, Herbert Schumacher, the plaintiff thereafter moved to vacate and set aside the judgment, and for judgment for the plaintiff, notwithstanding the verdict, or in the alternative for a new trial, which motion was denied, and the plaintiff duly appeals from the judgment entered in said action and from the order denying the motion for judgment notwithstanding the verdict, or for a new trial.

It was stipulated in effect, that on the third day of March, 1926,

the defendant, the Midwest Construction Company, was awarded a contract by Clay county, Minnesota, for the construction of a section of road in said county; and that on the third day of March, 1926, the defendant, the Midwest Construction Company, applied to the plaintiff for a bond as required by laws of Minnesota, and that on the third day of March, 1926, the plaintiff, as surety executed such bond with the defendant, the Midwest Construction Company, as principal. That the Midwest Construction Company entered upon the performance of the work of constructing said highway, employing labor, purchasing tools, machinery, material, and that on about the sixth of July, 1926, the defendant, the Midwest Construction Company, abandoned said work; that the Midwest Construction Company became indebted for the labor, tools, machinery, materials, insurance premiums, equipment and supplies in the sum of $4,546.24, which sum was paid by the plaintiff for the Midwest Construction Company, as a liability on said bond. The plaintiff further expended the sum of $2,500 in purchasing material, supplies and labor, in completing the building of said road, and the further sum of $819.21 in other necessary expenses, receiving from the said county of Clay on the completion of said work the sum of $4,010.13. The plaintiff claims that it is entitled to recover on a general indemnity bond executed on the sixth day of May, 1923.

The general contract of indemnity was signed by the defendant, Herbert Schumacher, on the sixth day of May, 1923. At that time, the defendant testified, that he was working for the Midwest Construction Company as foreman, in building a road near Dale, Minnesota; that his father, Charles Schumacher, and one Mr. Fevig, an agent of plaintiff, drove out to the place where he was working on the road. His father introduced Mr. Fevig, and witness said: "We didn't have much conversation I was busy, and he just pulled out this paper (meaning the general contract of indemnity) and he said sign it. It relates to some work up in North Dakota, and I signed it, and went on to my work. I did not read it." Ques. "Why did you not read it?" Objected to, as calling for a conclusion of the witness. Objection, overruled. Ans. "I was busy and I believed Mr. Fevig, what he said was truth. At that time the Midwest Construction Company had two

jobs in North Dakota, one in Barnes county, and one in Ransom county. They were the only jobs that the Midwest Construction Company had at that time, and the one in Dale, Minnesota, upon which I was working. It was after dinner in the afternoon sometime, that Mr. Fevig and my father came out. About one year later I quit working for the Midwest Construction Company. The crew of about twenty-five men was busy working when they came out, and I was in charge of it. He just pulled out this here paper, and told me to sign it, it was for some North Dakota job, and I signed it." This testimony was all objected to, by the plaintiff, on the ground that it was an attempt to change and vary the written terms of the contract by parole testimony. It was not an attempt to change the terms of a written contract, but it was offered for the purpose of showing fraud and deceit in the securing of the defendant's signature by making it appear to the defendant that it related to some work in North Dakota. It is the theory of the defense, that the defendant's father came with the representative of the indemnity company to where Herbert Schumacher was supervising, as foreman, the work of some twenty-five men who were working in the building of a road, that they came there during working hours, and the defendant Herbert Schumacher was told to sign the bond which related to some road construction in North Dakota, and which the Midwest Construction Company had a contract for at that time; that relying upon the statement that it related to the work in North Dakota, he signed what turned out to be a general bond of indemnity.

"Of course if the other party induces the signer to sign the paper without reading it, and to rely on his statement as to the contents, this may give the signer a right, if the statement was fraudulent, to avoid the contract as against him on the ground of fraud."

13 C. J. 371; 6 R. C. L. 624, §§ 43, 44; Standard Mfg. Co. v. Slot, 121 Wis. 14, 105 Am. St. Rep. 1016, 98 N. W. 923; Keller v. Ruppold, 115 Wis. 636, 95 Am. St. Rep. 974, 92 N. W. 364; Willard v. Nelson, 35 Neb. 651, 37 Am. St. Rep. 455, 53 N. W. 572; Wilcox v. American Teleph. & Teleg. Co. 176 N. Y. 115, 98 Am. St. Rep. 650, 68 N. E. 153; Crim v. Crim, 162 Mo. 544, 85 Am. St. Rep. 521, 54 L.R.A. 502, 63 S. W. 489; Black v. Wabash, St. L. & P. R. Co.

111 Ill. 351, 53 Am. Rep. 628; Finkelstein v. Henslin, 152 Minn. 386, 188 N. W. 737.

There was no error in the admission of the testimony. Appellant contends that it was error to permit witness to answer the question, viz.: "Now then, why didn't you read it?" (Meaning the contract of general indemnity) over the objection that it was calling for a conclusion. The answer being, "I was busy, and I believed Mr. Fevig what he said was the truth." It is well settled, that in actions where fraud or warranty is pleaded as a defense, that the defendant is entitled to testify that he believed and relied on the statements made.

Jones on Evidence, vol. 2, page 1337, § 714, states the rule as follows:

"Where fraud or deceit are alleged, or recovery is sought for breach of warranty, the party seeking recovery may testify directly that he relied upon representations of the promisor, and that but for such representations he would not have entered into the contract."

"Barron G. Collier v. Bailey, 31 Ga. App. 197, 120 S. E. 427; Breshears v. Callender, 23 Idaho, 348, 131 Pac. 15; Chester v. American Trust & Sav. Bank, — Ind. App. —, 141 N. E. 10; Van Spanje v. Hostettler, 68 Ind. App. 518, 119 N. E. 725; McCord v. Mitchell, 182 Iowa, 196, 165 N. W. 453; Aurand v. Perry Town Lot & Improv. Co. 178 Iowa, 262, 159 N. W. 779; Zenor v. Smith, 150 Iowa, 424, 130 N. W. 382; Steele v. Banninga, 225 Mich. 547, 196 N. W. 404; Carrington v. Miller, 124 Misc. 169, 207 N. Y. Supp. 154; Seaside v. Randles, 92 Or. 650, 180 Pac. 319; Holbrook v. J. J. Quinlan & Co. 84 Vt. 411, 80 Atl. 339; Cochran v. Craig, 88 W. Va. 281, 106 S. E. 633."

There was no error in the admission of the testimony.

Appellant has picked out certain parts of the instructions which he assigns as error. The parts objected to are in italics.

"A person signing a contract or written bond or agreement, acknowledging his signature, and that he did attach his signature to a certain bond or agreement, is presumed to know what he is signing, and to have signed it voluntarily, knowing all the conditions that it contained, but that is not such an absolute presumption that it cannot be rebutted, but if the party signing such a contract or bond is to be relieved from

it, he must by proper evidence show the conditions and circumstances under which he has signed it, and such conditions and circumstances as under the law would relieve him from the obligation that he has signed. *If you find from the evidence in this case, that the defendant knew nothing about this bond, except that it was presented to him when he was busy, and that it was stated to be a bond referring to the North Dakota contracts or matters, and nothing else was said, and he was asked to sign the bond and he signed the bond, without any further statement or consideration, and he would not have otherwise signed it, except for that statement, and the statement was made by the agent of the plaintiff corporation, and there were no other conditions, then and in that case the defendant would be entitled to a verdict at your hands relieving him from any judgment against him.* But as I said before, a person acknowledging that he has signed a certain contract, or written or printed instrument, is presumed to know its contents and all its conditions.

"The bond in this case is a general indemnity bond, and you will take that with you into your jury where you are to determine upon your verdict.

"A person in signing any bond or contract is presumed to act voluntarily, with knowledge as I said before of what he has signed, and what it contains, and what his signature binds him to. *If he is asked to sign a certain instrument and does not take the time or opportunity or the pains to look it over, but signs it for somebody that asks him to sign it, and he understands that it contains certain obligations and will bind him, under certain conditions to pay an indemnity, as in this case, but signs it upon the statement that it refers to certain specific North Dakota contracts, and nothing further is said, then and in that case, if that was the inducing cause of his signing the indemnity bond, and he would not have otherwise signed it, then he would be entitled to a verdict in his favor,* unless you find that when the bond was presented to the defendant he should have and could have, under the circumstances, acquainted himself with the full contents of the bond, and you further find that it was a general indemnity bond and was printed in letters or figures, that would call the attention of any person signing it, to the nature of the bond itself. If you find that

this indemnity bond has upon it such letters or figures that it would call the attention of any person signing it to its character, then and in that case, it would be the duty of the defendant before signed, and thereafter had the bond issued over his signature,—it would be the duty of the defendant to determine by examination of the bond and its conditions, to what extent he would be bound."

There is no error in either instruction. The law in such case is well stated in Standard Mfg. Co. v. Slot, 121 Wis. 14, 105 Am. St. Rep. 1016, 98 N. W. 923, as follows:

"If a person knowingly or ignorantly makes a false statement of fact in a business transaction reasonably calculated to deceive another and induce him to do that which he would not do with knowledge of the truth, and which has that effect, the act of such other is attributable to fraud and is not binding upon him unless he subsequently ratifies it with knowledge of the facts or in some other way precludes himself from rescinding it: Miner v. Medbury, 6 Wis. 295; Cotzhausen v. Simon, 47 Wis. 103, 1 N. W. 473; Davis v. Nuzum, 72 Wis. 439, 1 L.R.A. 774, 40 N. W. 497; Montreal River Lumber Co. v. Mihills, 80 Wis. 540, 50 N. W. 507; Beetle v. Anderson, 98 Wis. 5, 73 N. W. 560; Hart v. Moulton, 104 Wis. 349, 359, 76 Am. St. Rep. 881, 80 N. W. 599; Krause v. Busacker, 105 Wis. 350, 354, 81 N. W. 406; Zunker v. Kuehn, 113 Wis. 421, 425, 88 N. W. 605." "Willard v. Nelson, 35 Neb. 651, 37 Am. St. Rep. 455, 53 N. W. 572; Wilcox v. American Teleph. & Teleg. Co. 176 N. Y. 115, 98 Am. St. Rep. 650, 68 N. E. 153."

"It is immaterial in such a case whether the statements were willfully false or not, or whether the party making the false statements at the time thereof had any specific intent to deceive." Standard Mfg. Co. v. Slot, supra.

The instructions as a whole are as favorable to the plaintiff as he is entitled to under the evidence and the law. We have carefully read the record, and are of the opinion that the evidence sustains the verdict.

According to the testimony of the defendant, he was approached in the middle of the afternoon, when he was busily engaged in overseeing the work of some twenty-five men engaged in the building of a

highway. He was presented with a contract of indemnity containing approximately 2,000 words, and was told to sign it, that it related to some contracts in North Dakota, and that believing the statement made to him by the plaintiff's agent, he signed the contract.

Plaintiff's agent, Fevig, testified that he had no recollection of when the bond was signed. He could not say that he ever saw the defendant sign the bond, but he knew he did not tell the defendant, Herbert Schumacher, that it applied to contracts in North Dakota only, for if he did make such a statement it would not be true, in fact, it is conceded by the testimony of Fevig, that if he made such a statement it would be a false statement, and it was for the jury to say whether he made the statement, and whether the defendant, Herbert Schumacher, believed it, and relying on it signed the bond.

The judgment and order appealed from are affirmed.

BIRDZELL, NUESSLE, BURR, and CHRISTIANSON, JJ., concur.